UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF LUQMAN A. ABDULLAH, by its
personal representative, MUJAHID CARSWELL,

       Plaintiff,                              CASE NO. 12-14766
                                                 HON. LAWRENCE P. ZATKOFF
v.

ANDREW G. ARENA, GEORGE NIKOLOPOULOS,
and UNIDENTIFIED FBI AGENTS 1-4, each of whom
in his individual capacity, jointly and severally,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 28th day of March, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on: (1) Plaintiff's response to the Court's Order to Show Cause, (2) a Motion to Quash Subpoena filed by the Government (Docket #21), and (3) a Motion to Dismiss filed by Defendants Andrew G. Arena ("Arena") and George Nikolopoulos ("Nikolopoulos") (Docket #28). All of the matters have been fully briefed.[1] The Court finds that the facts and legal arguments pertinent to the matters are adequately presented in the parties' papers,

---

[1] As it pertains to Plaintiff's response to the Court's Order to Show Cause, the parties filed multiple responses and replies, most of which were not ordered by the Court or authorized by applicable law. In the interest of allowing the parties to fully argue the issues raised by the Order to Show Cause (and because most of the arguments therein were also made when they briefed the Motion to Dismiss), the Court has reviewed and considered all of the filings.

and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted by the parties, without this Court entertaining oral arguments. For the reasons that follow, (1) the Government's Motion to Quash Subpoena (Docket #21) is denied as moot, (2) the Motion to Dismiss filed by Defendants Arena and Nikolopoulos (Docket #28) is granted, and (3) Plaintiff's cause of action is dismissed with prejudice.

## II. BACKGROUND

### A. Plaintiff's Allegations

On October 28, 2009, at approximately 12:04 p.m., Luqman A. Abdullah ("Abdullah") was shot and killed by four unidentified Federal Bureau of Investigation ("FBI") Agents in a warehouse in Dearborn, Michigan. Mujahid Carswell, the personal representative of Abdullah's Estate (hereinafter, "Plaintiff"), asserts that Abdullah was unarmed, had surrendered and was lying on the ground with his arms outstretched before him when the FBI Agents shot him. Therefore, Plaintiff claims that the FBI Agents improperly and without cause used excessive force against Abdullah by: (1) deploying an FBI K-9 to attack and maul Abdullah, thereby causing severe injuries to Abdullah's left arm, face, lower jaw, and upper jaw, and (2) firing approximately twenty rounds into Abdullah's body.

On October 28, 2009, a press release about the attempted arrest and shooting of Abdullah was issued by various officials, including Arena, the Special Agent in Charge of the FBI's Detroit Field Division Office at the time. The press release stated that during the arrests of Abdullah and several co-defendants: (1) the suspects were ordered to surrender; (2) the other four suspects

surrendered; (3) Abdullah did not surrender but instead fired his weapon; (4) an exchange of gun fire followed and Abdullah was killed; and (5) an FBI canine was killed during the exchange.

Plaintiff claims the Government has engaged in the ongoing and active manipulation and suppression of evidence concerning the death of Abdullah, as well as the concealment of the identities of the four FBI Agent shooters in an attempt to escape liability. Plaintiff further claims to have gone above and beyond due diligence to determine the events that transpired that resulted in connection with Abdullah's death and the identities of the FBI Agents involved. Plaintiff's efforts included the filing of one or more Freedom of Information Act ("FOIA") requests with each of the federal, state and local agencies involved in the tactical operation in any capacity in order to obtain evidence and to determine the identities of the FBI agents. These agencies included: (1) Federal Bureau of Investigation, (2) United States Department of Justice ("DOJ"), (3) Department of Attorney General, State of Michigan, (4) Michigan State Police Department, (5) City of Detroit, (6) Wayne County Sheriff' Office, (7) City of Dearborn, and (8) Wayne County Medical Examiner's Office. All of the FOIA requests were made and denied on or before May 13, 2010. Plaintiff' counsel also filed FOIA lawsuits in 2010 against six of the government agencies, including the FBI. As part of a number of settlement agreements with the non-federal agencies (apparently, no such agreement was reached with the FBI), Plaintiff received over one thousand pages of documents, in addition to photographs, sketches, audio, police cam footage, and video footage. The identities of the four FBI Agent shooters were redacted from those materials pursuant to FOIA exemptions under M.C.L. §15.243.

Plaintiff also turned to public officials, the media, and community organizations to pressure the FBI to conduct a thorough and transparent investigation, as well as release evidence in

3

connection with the death of Abdullah. A number of government officials (including United States Congressman John Conyers, Michigan State Representative Bettie Scott Cook, Detroit Mayor Dave Bing, and the Detroit Board of Police Commissioners), community organizations,[2] and newspapers (including the Detroit Free Press) demanded a complete and thorough investigation into the shooting of Abdullah and the release of evidence.

The Abdullah shooting incident was investigated by the Dearborn Police Department and reviewed by the Michigan Attorney General.  On September 30, 2010, the Michigan Attorney General released a report (the "AG's Report") on the fatal shooting of Abdullah by FBI Agents.  The AG's Report concluded that the shooting was justified and that the four FBI Agents directly involved in the shooting acted in accordance with Michigan law. The report found that the four FBI Agents were in fear of their lives and the lives of others when they returned fire at Abdullah.  Signed sworn statements from each of the four FBI Agent shooters were attached to the AG's Report.  The AG's Report and the attached sworn statements disclosed the first names of the four FBI Agent shooters but withheld their last names in order to protect them and their families from possible retaliation. The sworn statements of the shooting agents also provided the first and last names of several other FBI Agents involved in the arrest operation–including Nikolopoulos's full name and a description of his role and activities relative to the shooting.  The AG's Report, including the attachments, was released to the public on September 30, 2010.

---

[2]Community organizations included the Council on American Islamic Relations, the Detroit Coalition Against Police Brutality, the National Association for the Advancement of Colored People, the American Civil Liberties Union, National Lawyers Guild, Muslim Public Affairs Council, and American Arab Anti Discrimination Committee, among many others.

On October 13, 2010, the Civil Rights Division of the DOJ released a report (the "DOJ Report") detailing it's findings based upon its own investigation of the Abdullah shooting. The DOJ Report also exonerated the FBI Agents of any liability. The DOJ Report concluded that the FBI Agents who shot Abdullah had exercised appropriate use of deadly force when they shot Abdullah after he fired his handgun toward them. The DOJ Report did not release any evidence related to the death of Abdullah, and it concealed the names of the FBI agents involved. The same day the DOJ Report was released, Thomas E. Perez, Assistant Attorney General for the Civil Rights Division of the DOJ, met with Plaintiff's counsel and the family of Abdullah. During that meeting, Mr. Perez refused to divulge the any information requested by them. On October 22, 2010, the Detroit Free Press posted a video from a surveillance camera operating inside the warehouse at the time of the Abdullah shooting.

On October 25, 2012, Muhammad Abdus Salaam ("Salaam"), a convicted co-conspirator of Plaintiff (and Abdullah) who was with Abdullah in the warehouse (but surrendered just prior to, and was arrested immediately following, the Abdullah shooting), provided Plaintiff with a sworn affidavit. In his affidavit, Salaam averred that: (1) Abdullah complied with the orders of the FBI Agents by showing his hands and getting down on the ground with his arms fully outstretched in front of him, (2) Abdullah was holding the K-9 with both hands and did not point a weapon at any time toward the K-9 or the FBI Agents, and (3) he did not see Abdullah carrying a gun or any other weapon that day.

**B.     Procedural History**

Plaintiff filed the instant action on October 26, 2012, against "Unidentified FBI Agents," alleging that the FBI Agents used excessive force when: (a) permitting the K-9 to attack Abdullah,

5

and (b) shooting him 20 times. Plaintiff's counsel caused the Complaint and Summons to be served upon the FBI (in Washington, D.C.), the Office of the Attorney General (at the DOJ in Washington, D.C.), and the Office of the United States Attorney in Detroit. Upon application of Plaintiff, the Clerk of the Court entered a default against the Unidentified FBI Agents "for failure to plead or otherwise defend" on January 15, 2013. After discussions with an Assistant United States Attorney for the Eastern District of Michigan (whereby he agreed to accept service of a subpoena that compelled disclosure of, among other things, the identities of the Unidentified FBI Agents described in Plaintiff' Complaint), Plaintiff filed a Motion to Voluntarily Set Aside Clerk's Entry of Default Against Unidentified FBI Agents. The Government filed a brief in support of that motion, and the Court has granted Plaintiff's Motion to Voluntarily Set Aside Clerk's Entry of Default.

Shortly thereafter, the Court ordered Defendants to appear and file an answer to Plaintiff's Complaint. The Government timely filed a responsive document, wherein the Government claimed that it was "precluded from answering the complaint" because it was not a named party. The Government also "suggest[ed] that the Court *sua sponte* enter an order dismissing this lawsuit with prejudice." After the Government filed its "response" to the Court's Order, the Court entered an Order to Show Cause requiring Plaintiff to explain why the action should not be "dismissed as a matter of law, due to Plaintiff's failure to sue any identified (named) individuals or parties prior to October 29, 2012."

Before filing a response to the Order to Show Cause, Plaintiff filed an Amended Complaint naming Arena and Nikolopolous as individual Defendants and describing the Defendant Unidentified FBI Agents as follows:

> 6. Defendants Unidentified FBI Agent Nos. 1, 2, 3, and 4 (together "unidentified FBI Agents" are employed by the Federal Bureau of Investigation ("FBI"), and are the

        four FBI agent shooters involved in the tactical operation inside the warehouse that resulted in the death of Abdullah. The Unidentified FBI Agents are being sued in their individual capacities.

7.     The tactical operation included a combination of the FBI Detroit SWAT Team, the FBI Detroit Joint Terrorism Task Force (the "FBI Detroit JTTF"), the FBI Hostage Rescue Team (the "FBI HRT"), and the FBI canine team.

8.     Upon information and belief, Unidentified FBI Agent No. 1 is the FBI HRT Team Leader.

9.     Upon information and belief, Unidentified FBI Agent No. 2 is the FBI HRT K-9 ("Freddy") Handler.

10.     Upon information and belief, Unidentified FBI Agent No. 3 is the FBI HRT K-9 ("Freddy") Cover.

11.     Upon information and belief, Unidentified FBI Agent No. 4 is an FBI Detroit –SWAT Agent. The Unidentified FBI Agents are being sued in their individual capacities."

Plaintiff then filed a timely response to the Court's Order to Show Cause and issued a subpoena to the Government for the purpose of obtaining the identities of the FBI Agents responsible for the death of Abdullah. The Government filed its Motion to Quash Subpoena in response to that subpoena. Thereafter, Arena and Nikolopoulos filed their Motion to Dismiss.

### III.  LEGAL STANDARDS

**A.**     **Statute of Limitations**

In constitutional tort actions, the federal courts borrow the applicable statute of limitations from the state where the claims arose. *Hardin v Straub*, 490 U.S. 536, 538 (1989). In Michigan, the standard limitations period for a wrongful death action is three years. M.C.L. § 600.5805(10). Generally, "the statute of limitations begins to run after the plaintiff knows, or has reason to know,

7

of the injury forming the basis of his action." *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997).

### B.     Unidentified (John Doe) Defendants

Courts generally permit a plaintiff to bring suit against fictitious "John Does" as a device for enabling a plaintiff to proceed against parties who are not known at the time the complaint is filed, but whose identities may be learned through the discovery process or with judicial assistance. *See, e.g., Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Unidentified defendants, or "John Doe" defendants, however, are fictitious designations, *Kemper Ins. Co. v. Federal Express Corp.,* 115 F.Supp.2d 116, 124 (D. Mass. 2000), *aff'd,* 252 F.3d 509 (1st Cir. 2001), and they are not real parties to a lawsuit. Only after the "John Doe" defendants have been replaced with named defendants and served with process do they become actual defendants. *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (action not commenced against "John Doe" defendants named in original complaint until John Does identified and served with process). As such, adding new, previously unknown defendants in place of "John Doe" defendants in an amended complaint "is considered a change in parties, not a mere substitution of parties." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

### C.     Michigan Fraudulent Concealment Law

Michigan's Fraudulent Concealment Statute provides in relevant part:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

M.C.L. § 600.5855.

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent."*Lemson v. General Motors Corp.*, 66 Mich.App. 94, 97 (1975) (*quoting DeHaan v. Winter*, 258 Mich. 293, 296 (1932)).

> When the basis of the action is some wrong other than a fraud, the fraudulent concealment which will work a postponement of the statute must be a concealment produced by affirmative acts or misrepresentations. A mere silence on the part of the defendant is not enough. The plaintiff must show some arrangement or contrivance on the part of the defendant, of an affirmative character, designed to prevent subsequent discovery. The rule in question prohibits the defendant from doing at any time anything to prevent the plaintiff from ascertaining subsequently to the transaction out of which the right of action arises the facts upon which it depends, either by affirmative action which conceals the truth, or by any device which avoids inquiry that would lead to a discovery. Where, however, the basis of the action is a fraud perpetrated by the defendant, the original fraud is regarded as a continuing affirmative act, and mere silence of the defendant is treated as a concealment.

*Draws v. Levin*, 332 Mich. 447, 452-53 (1952) (*quoting Dowse v. Gaynor*, 155 Mich. 38 (1908)). Thus, tolling occurs when a defendant[3] commits affirmative acts or misrepresentations designed to prevent subsequent plaintiff from discovering its ***potential*** claim. *Phinney v. Perlmutter*, 222 Mich.App. 513, 562-63 (1997).

Section 600.5855 does not address non-disclosure of facts or evidence which support the claim. *Gomez v. Great Lakes Steel Division National Steel Corp.,* 803 F.2d 250, 254-55 (6th Cir. 1986) (allegation of employer's failure to admit discriminatory motive for not promoting plaintiff may have stated a cause for concealment of evidence to prove a claim but not for fraudulent

---

[3]For purposes of this Opinion, the Court assumes (but does not determine) that all of the fraudulent concealment alleged by Plaintiff was attributable to Defendants, not third-parties.

9

concealment of the existence of the claim itself). As stated in *Eschenbacher v. Hier,* 363 Mich. 676, 682 (1961) (citations and internal quotations omitted):

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

Thus, the question of whether a plaintiff has sufficient knowledge to bring a claim is not based on "whether the plaintiff has knowledge of sufficient facts to prevail on a claim, but whether the plaintiff has knowledge of sufficient facts to cause a reasonable person to pursue an investigation that could uncover the evidence needed to lead to an ultimate victory." *Moll v. Abbott Laboratories,* 444 Mich. 1, 21 n.25 (1993). In other words, a plaintiff is sufficiently apprised of a cause of action if he or she is aware of a "possible cause of action." *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit,* 264 Mich.App. 632, 645 (2005).

Finally, a plaintiff is required to exercise reasonable diligence to discover a cause of action. *See McNaughton v. Rockford State Bank*, 261 Mich. 265 (1933). Application of fraudulent concealment should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009). A plaintiff must demonstrate that his ignorance is not attributable to a lack of diligence on his part. *Id.* Parties who rely on equitable tolling through fraudulent concealment have the burden of demonstrating its applicability. *Pinney Dock & Transp. Co. v. Penn Central Corp.,* 838 F.2d 1445, 1465 (6th Cir. 1988).

## IV. ANALYSIS

Plaintiff argues that because the excessive force claim was not "actually" discovered until October 25, 2012, due to fraudulent concealment by Defendants, the statute of limitations on her cause of action does not expire until October 25, 2014 (two years after that discovery). Plaintiff further argues that she was diligent in her attempt to discover the existence of a claim.

**A.      Concealment of a Possible Cause of Action**

Plaintiff's suggestion that anyone concealed a possible cause of action against the FBI or its Agents stemming from the shooting death of Abdullah is erroneous. First, Abdullah was shot and killed on October 28, 2009. On the same day, the FBI issued a press release by various officials, including Arena, that indicated that Abdullah was killed in an exchange of gun fire with FBI Agents after Abdullah refused to surrender and fired his weapon. That press release, together with similar subsequent public statements made by FBI Agents (and by the FBI Agent shooters to investigators to the Michigan Attorney General during the Michigan Attorney General's investigation) did not conceal the existence of a claim or possible claim against them. To the contrary, all of those statements made clear to the public that FBI agents were responsible for the shooting death of Abdullah. Therefore, even if Arena and/or others wrongfully indicated that Abdullah had a weapon at the time of the shooting (as Plaintiff asserts), it was clear to the public as early as October 28, 2009, that FBI agents were involved in the circumstances that resulted in Abdullah's death.

Second, the press release: (a) identified each of the eleven persons charged with conspiracy to commit several federal crimes, including Abdullah, Salaam and Plaintiff, and (b) stated that there were four co-conspirators of Abdullah who surrendered and were arrested at the site of the Abdullah shooting. In other words, no later than the day after Abdullah was shot, the public had knowledge of the names of the alleged co-conspirators of Abdullah, including Salaam, and that there were (at

11

least) four potential non-law enforcement eyewitnesses to Abdullah's shooting. Therefore, on or about October 29, 2012 (allowing a day from the press release for the news to be published by media outlets), Plaintiff knew or had reason to know the identity of all alleged co-conspirators of Abdullah and that four of the alleged co-conspirators where present when Abdullah was shot. Accordingly, Plaintiff (or her family and/or legal counsel, all of whom made multiple public statements questioning or challenging the FBI's version of the Abdullah shooting within a year of the shooting) could have contacted any of the other alleged co-conspirators, including Salaam, at any point after the day of shooting.[4]

Third, as many of the exhibits to Plaintiff's response to the Court's Order to Show Cause reveal, the shooting of Abdullah was a well-publicized and much criticized event–with many persons in political offices, the media and various organizations calling for an investigation into the shooting death of Abdullah. *See, e.g.,* October 29, 2009, Press Release from the Muslim Public Affairs Council; November 29, 2009, Article in the Examiner.com discussing Detroit Mayor Dave Bing's support for an independent investigation of the Abdullah shooting; January 13, 2010, Letter from the 111th Congress, House of Representatives Committee on the Judiciary (John Conyers, Chairman) to Eric Holder; February 4, 2010, Detroit Board of Police Commissioners Resolution;

---

[4]Plaintiff's initial response to the Court's Order to Show Cause stated that Salaam, "the only civilian eyewitness to the shooting death of Abdullah, having just been released from prison approximately two weeks earlier, provided a sworn affidavit [on October 25, 2012] that is both consistent with forensic evidence and directly contradictory to the FBI's version of events." The Court notes, however, that the Bureau of Prisons shows Salaam was released from prison on October 14, 2011, a year and two weeks before: (1) Salaam filed his affidavit in support of Plaintiff's claims that Abdullah was unarmed, and (2) Plaintiff filed this lawsuit. The Court also notes that Plaintiff does not indicate if and/or when she made any attempt to obtain this information from Salaam (and/or any of the other co-conspirators who were arrested at the Dearborn warehouse at the time Abdullah was shot) prior to October 25, 2012.

April 2, 2010, Letter from State of Michigan Representative Bettie Cook Scott to the Executive Director of the Council on American-Islamic Relations-Michigan.

Finally, Plaintiff argues that she "would be hard pressed to file suit if Defendants' defense is accepted as true; specifically that Abdullah was armed and fired his weapon (which it was later learned was false)." Plaintiff's argument fails to recognize (or, perhaps, acknowledge) the dynamics of many situations in society and virtually every case filed in our legal system. In virtually every case, the party that is sued gives an exculpatory story and denies what the suing party says. For that reason, Michigan courts recognize that a defendant's exculpatory statement about an incident in which the plaintiff was injured does not constitute fraudulent concealment of a claim or possible claim against the defendant. *See, e.g., Witherspoon v. Guilford,* 203 Mich.App. 240, 248 (1994) (no fraudulent concealment of motor vehicle accident claim where the defendant driver gave an exculpatory account of the accident to the police shortly after it occurred, even though eyewitness and accident reconstruction expert testimony later contradicted her version); *English v. Bousamra,* 9 F.Supp.2d 803, 810-11 (W.D. Mich. 1998), *aff'd*, 188 F.3d 507 (6th Cir. 1999) (no fraudulent concealment where defendant changed his story about who was driving the car at the time of the motor vehicle accident). Therefore, even if it is true that Arena, Nikolopoulos or any of the unidentified FBI Agents made exculpatory statements about the Abdullah shooting and such statements <u>might</u> serve as the basis for a cause of concealment of evidence to prove a claim, such statements do not form the basis for fraudulent concealment of the claim itself.

For the foregoing reasons, the Court finds that: (a) Plaintiff knew or had reason to know of the existence of the cause of action no later than October 29, 2009, and (b) Plaintiff is not entitled to a tolling of the three-year statute of limitations due to fraudulent concealment of a claim by

13

Defendants. Therefore, in order to file a timely cause of action, Plaintiff had to file her cause of action on or before October 29, 2012. It is undisputed that Plaintiff timely filed her cause of action on October 26 2012.

### B.     Fraudulent Concealment of Identity of Unidentified FBI Agents

Typically, the filing of an amended complaint to add names of previously unnamed "John Doe" defendants does not relate back to the date of the filing of the original complaint, *Treadway*, 75 F.3d at 240, and an action is time-barred against a party who is not named within the applicable statute of limitations, unless an exception applies. In this case, it is undisputed that Plaintiff did not identify any person as a defendant prior to October 29, 2012. Plaintiff argues, however, that because of Defendants' fraudulent concealment of the cause of action and the identities of the "Unidentified FBI Agents," together with her diligence in seeking to ascertain their identities, Plaintiff's action should not be time-barred against the "Unidentified FBI Agents" if Plaintiff identifies and names them by October 25, 2014 (two years from the date Salaam signed his affidavit).

Plaintiff's primary argument in support of a finding that there was fraudulent concealment of the identities of the FBI Agent shooters was that "there was no need to actually know the identities of Defendants responsible for the use of excessive deadly force" because Plaintiff was unaware of a cause of action. As discussed above, however, Plaintiff's contentions that Defendants were fraudulently concealing a cause of action lacks merit. As such, the alleged fraudulent concealment of a cause of action cannot serve as a basis for finding that Defendants were fraudulently concealing the identities of any of the FBI Agents involved in the Abdullah shooting.

Plaintiff also argues that Defendants did not "properly release the names of the Unidentified FBI Agents on their own volition[.]" Plaintiff's argument is premised on the fact that Plaintiff's

counsel filed numerous FOIA requests to: (1) the FBI; (2) the Michigan State Police; (3) the Civil Rights Division of the DOJ; (4) the City of Dearborn; (5) the City of Detroit; (6) the Michigan Attorney General; and (7) the Wayne County Sheriff's Office. In each instance, after the FOIA request(s) was/were denied by the agency or department, Plaintiff's counsel filed a FOIA lawsuit against such department or agency. Plaintiff's contentions regarding the FOIA requests and lawsuits lack merit for several reasons.

First, it is undisputed that Plaintiff's counsel never appealed any of the FOIA request denials, even though each FOIA denial letter explicitly instructed the manner of appealing the denial. Whether or not such FOIA requests were wrongfully denied is not a matter that can be raised before this Court at this time. Second, federal and state law provided for various exemptions from disclosure as it relates to FOIA requests–and the identities of FBI Agents under the circumstances surrounding the Abdullah shooting fall within the exemptions to FOIA disclosures. *See* 5 U.S.C. § 552(b)(7)(A), (B) and (C); M.C.L. § 15.243. This is especially true when such requests are made while there is a related criminal case pending, a fact illuminated in the Civil Rights Division of the DOJ's December 29, 2010, response to Plaintiff's counsel's FOIA request. Therein, the Civil Rights Division of the DOJ noted that, at the time of Plaintiff counsel's FOIA request to that agency, the presiding judge in the then-ongoing criminal prosecutions of most of the alleged Abdullah co-conspirators had issued an order restricting the disclosure of "any and all written and recorded information . . ." related to such prosecutions. Third, Plaintiff's counsel stipulated to dismiss each of the FOIA lawsuits she filed against those departments and agencies relating to the denial of FOIA requests.

Plaintiff also argues that the Court should not dismiss Plaintiff's Amended Complaint and should allow Plaintiff to conduct discovery in connection with the names of Defendant Unidentified FBI Agents, all of whom are indisputably easy to identify. As discussed above, however, Plaintiff knew or should have known that she had a cause of action by the end of October 2009. For that reason, she should have filed the instant lawsuit long ago (rather than three days before the expiration of the statute of limitations) in order to utilize the avenues afforded to parties in federal court to discover the identity of the FBI Agents (such as: (1) the issuance of a subpoena, (2) seeking an order from the Court directing the FBI to show cause why it should not be required to identify the unnamed defendants, or (3) otherwise engaging in discovery in a manner where the identities of the FBI Agents are not revealed in a manner that would jeopardize their safety or the safety of their families).[5] *See Smith v. City of Akron*, 476 Fed.Appx. 67, 69 (6th Cir. 2012) ("Because plaintiff waited until the last day of the . . . limitations period to file his complaint [against unidentified defendants], that left no time to discover the identity of his arresting officers within the relevant time."); *Bivens*, 403 U.S. at 389 n.2.

Accordingly, and for the reasons stated above, the Court concludes that Plaintiff is not entitled to a tolling of the three-year statute of limitations due to fraudulent concealment of the identity of the "Unidentified FBI Agents." Therefore, in order to file a timely cause of action, Plaintiff had to file her cause of action—and name all parties whom she was going to sue—on or before October 29, 2012. Plaintiff did not name any person as a Defendant on or before October 29,

---

[5]Ironically, in the Examiner.com article cited by Plaintiff and noted above, an article published only one month after the shooting of Abdullah, the author stated: "The issue of what form such an investigation would take is not a simple one. It is difficult to imagine how all necessary information could be gathered absent involvement of a federal judge with subpoena power, as in a federal lawsuit filed by [Abdullah]'s estate claiming his civil rights were violated[.]"

16

2012 (and, Plaintiff still has not identified "Unidentified FBI Agents Nos. 1-4"). Accordingly, the Court holds that Plaintiff's cause of action against the "Unidentified FBI Agents" is time-barred.[6]

## C. Motion to Dismiss filed by Arena and Nikolopoulos

As set forth above, Arena's identity was publicly known the day of the shooting, a fact that Plaintiff makes clear in her filings. Therefore, under the Michigan three-year statute of limitations applicable to this case, Plaintiff had to name Arena as a Defendant in this cause of action no later than October 29, 2012. Plaintiff did not name Arena as a Defendant until filing her Amended Complaint on April 18, 2013. Accordingly, the Court finds that Plaintiff's cause of action against Arena is time-barred.

For purposes of this Opinion, the Court will assume that Nikolopoulos's involvement in the shooting of Abdullah was fraudulently concealed for a certain time period. Even if the Court makes that assumption, however, it is undisputed that: (a) the AG's Report was released on September 30, 2010, and (b) the AG's Report identified Nikolopoulos by his full name, along with a description of his role and activities related to the Abdullah shooting. Based on Nikolopoulos's identity being made public in the AG's Report on September 30, 2010,[7] the Court finds that any fraudulent concealment of Nikolopoulos's identity by Defendants necessarily ended that day. Thus, the fraudulent concealment doctrine, if it was applicable in this case, with the two-year period from the time of discovery, would have given Plaintiff only until September 30, 2012 to file her cause of

---

[6]Moreover, any attempt by Plaintiff to further amend the Complaint (Amended Complaint) to name any defendant(s) in the future in place of, or in addition to, the "Unidentified FBI Agents" would be futile because the action would be time-barred against those persons for the reasons stated above.

[7]Notably, Plaintiff's counsel and Abdullah's immediate family publicly commented on the AG's Report within days of the AG's Report being issued.

action against Nikolopoulos, obviously an earlier date than Plaintiff is afforded under the applicable three-year statute of limitations. Therefore, in order for Plaintiff to file a timely cause of action against Nikolopoulos arising out of the Abdullah shooting, Plaintiff had to name Nikolopoulos as a Defendant in the instant cause of action no later than October 29, 2012. As Plaintiff did not name Nikolopoulos as a Defendant until filing the Amended Complaint on April 18, 2013, the Court finds that Plaintiff's cause of action against Nikolopoulos is time-barred.

For the foregoing reasons, the Court grants the Motion to Dismiss filed by Arena and Nikolopoulos.

**D.     Dismissal of Action**

Plaintiff argues that this Court should not "*sua sponte*" dismiss her cause of action based on the Sixth Circuit's decisions in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983) (a case that has been statutorily overruled), and *Morrison v. Tomano*, 755 F.2d 515 (6th Cir. 1985). The Court is not persuaded by Plaintiff's argument. First, the Court did not *sua sponte* dismiss Plaintiff's cause of action. In the Order to Show Cause, the Court gave Plaintiff notice that there appeared to be a basis for dismissal of Plaintiff's cause of action, but the Court did not dismiss the case at that time. Instead, the Court gave Plaintiff an opportunity to respond to the Court's stated reasons for believing dismissal might be appropriate, *i.e.*, because it was time-barred. Plaintiff then responded to the Court's invitation to respond—repeatedly (as did the Government). Therefore, Plaintiff had more than an ample opportunity to present her arguments why her case was viable and not time-barred. Then, as set forth above, the Court thoroughly spelled out the reasons the Court was dismissing Plaintiff's cause of action, *i.e.*, due to its untimeliness (a procedural basis), not the merits of

Plaintiff's claims. For these reasons, the Court has satisfied the requirements of *Tingler* (even if it was still applicable) and *Morrison, supra*.

Second, Plaintiff's contends that the issue of whether the Defendants engaged in fraudulent concealment is an issue of fact for the jury to decide, not a determination to be made by the Court. Plaintiff relies on the ruling in *Liuzzo v. United States*, 485 F.Supp. 1274 (E.D. Mich. 1980), wherein the court—according to Plaintiff— held that "factual disputes as to the extent of the government's concealment preclude a dispositive motion." This is an erroneous interpretation of *Liuzzo*, however, that ignores what that court did. In *Liuzzo*, the court, on a motion to dismiss filed by the government, actually engaged in an analysis of facts in order to determine whether there was evidence to support the tolling of the statute of limitations pursuant to the Federal Torts Claim Act. In that case, unlike this one, the court concluded that, because the plaintiff "had no reason to commence an investigation into governmental complicity in their mother's murder" for 10 years due to the actions of the government, the plaintiff's cause of action was not time-barred. *Id.* at 1283. Moreover, not only did the *Liuzzo* court engage in the exact factual analysis Plaintiff contends this Court cannot undertake, the facts of that case stand in deep contrast to the facts of this case, where it has been clear since the day that Abdullah was shot that FBI Agents shot Abdullah.

For the reasons stated above, the Court rejects Plaintiff's arguments that this Court does not have the authority to decide the issue of fraudulent concealment of a claim and/or identity and dismisses Plaintiff's cause of action, with prejudice.

**E.  Motion to Quash Subpoena**

For the reasons set forth above, there is no longer a pending cause of action before this Court. Accordingly, the Motion to Quash Subpoena is denied as moot.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, (1) the Government's Motion to Quash Subpoena (Docket #21) is DENIED AS MOOT, (2) the Motion to Dismiss filed by Defendants Arena and Nikolopoulos (Docket #28) is GRANTED, and (3) Plaintiff's cause of action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff<br>LAWRENCE P. ZATKOFF<br>UNITED STATES DISTRICT JUDGE

Dated: March 28, 2014